**Michael K. Kelley** OSB No. 853782
email: Kelley@hk-law.com
**Michael G. Neff** OSB No. 925360
email: MNeff@kh-law.com
**HAGLUND KELLEY LLP**
200 SW MARKET Street, Suite 1777
Portland, Oregon 97201
Phone: (503) 225-1257
Special Assistant Attorneys General for Plaintiff

Tim D. Nord, OSB No. 882800
email: Tim.D.Nord@doj.state.or.us
Special Counsel
**Department of Justice**
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 934-4400

Attorneys for Plaintiff State of Oregon

## IN THE UNITED STATED DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## (SAN FRANCISCO DIVISION)

**IN RE TFT-LCD (FLAT PANEL)**
**ANTITRUST LITIGATION**

This Document Relates to:

STATE OF OREGON, ex rel. Ellen F.
Rosenblum, Attorney General,

        Plaintiff,

        v.

AU OPTRONICS CORPORATION, et al.,

        Defendants.

Case No. Master File No. 3:07-md-1827 SI

Case No. 3:10-4346 SI

**PLAINTIFF STATE OF OREGON'S NOTICE
OF MOTION AND MOTION FOR
APPROVAL OF SETTLEMENTS WITH ALL
DEFENDANTS**

Hearing Date: October 30, 2015
Time: 9:00 A.M.
Courtroom: 10

The Honorable Susan Illston

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 2

II.  BACKGROUND .................................................................................................. 4

    A.  Oregon's Case ............................................................................................ 4

        1.  Discovery .......................................................................................... 5

            a.  Document Review and Fact Witness Depositions ..................... 5

            b.  Discovery Requests Served Upon Defendants,
                Co-Conspirators and Third-Parties ............................................. 6

            c.  Responses to Written Discovery Propounded By Defendants
                on Oregon ..................................................................................... 6

            d.  Depositions of State Employees ................................................. 7

        2.  Motion Practice ................................................................................ 7

        3.  Expert Work ...................................................................................... 7

        4.  Settlement Agreements .................................................................... 7

            a.  Monetary Payment ...................................................................... 8

            b.  Injunctive Provisions .................................................................. 8

            c.  Cooperation ................................................................................. 8

            d.  Release ......................................................................................... 8

III.  THE PROPOSED SETTLEMENTS ARE REASONABLE AND SHOULD BE
      APPROVED ......................................................................................................... 9

    A.  The Standard for Settlement Approval - Deference for Attorney General
        Settlements of *Parens Patriae* Actions ..................................................... 9

    B.  This Court Should Approve the Proposed Settlements .................................. 10

IV.  THE PROPOSED NOTICE AND OPT-OUT PROCEDURES SHOULD
      BE APPROVED ................................................................................................... 12

    A.  Approval of Initial Notice and Opt-Out Procedures ..................................... 12

    B.  Additional Notice to File Claims .................................................................. 14

-i-

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 934-4400/Fax: (503) 378-5017

V.   DISMISSAL, DISTRIBUTION AND ATTORNEYS' FEES AND COSTS ............15

    A.   Dismissal ........................................................................................................15

    B.   Distribution ...................................................................................................15

    C.   Attorneys' Fees and Costs .............................................................................17

    D.   Disbursement for Administrative Expenses....................................................17

    E.   Proposed Order .............................................................................................17

VI.   CONCLUSION....................................................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

-ii-

## TABLE OF AUTHORITIES

1

2                                                                                          **Page(s)**

3   Cases

4   *Anderson v. Barclays Capital Real Estate, Inc.*,
       2010 WL 7366781 (N.D. Ohio 2010) ...............................................................................9
5
    *In re DRAM Antitrust Lit.*,
6       C 06-04333 SC (N.D. Cal. June 23, 2010) ....................................................................12

7   *In re Lorazepam & Clorazepate Antitrust Litig.*,
8       205 F.R.D. 369, 380 (D.D.C. 2002) ...............................................................................10

9   *In re Mid-Atlantic Toyota Antitrust Litig.*
       564 F. Supp. 1379 (D.Md. 1983) ..............................................................................10, 11
10
    *New York v. Reebok Int'l. Ltd*,
11      96 F.3d 44 (2d Cir. 1996) ..............................................................................................10

12  *Officers for Justice v. Civil Serv. Comm'n.*,
       688 F.2d 615 (9th Cir 1982) ...........................................................................................10
13
    *In re Syncor ERISA Litigation*,
14      516 F.3d 1095 (9th Cir 2008) .........................................................................................10

15  *In re Toys 'R' Us Antitrust Litig*,
16      191 F.R.D. 347 *(E.D.N.Y. 2000)* ....................................................................................10

17  **Statutes**

18  Oregon Revised Statutes 646.705 .........................................................................................9

19  ORS 180.095 ....................................................................................................................5, 17

20  ORS 646.775 .............................................................................................................1, 3, 9, 17

21  ORS 646.775(2) ......................................................................................................................4

22  ORS 646.775(2)(a) .................................................................................................................13

23  ORS 646.775(2)(b) .................................................................................................................13

24

25

26                                                    -iii-

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 934-4400/Fax: (503) 378-5017

ORS 646.775(3) ........................................................................................................9

ORS 646.775(5)(a) ..................................................................................................16

ORS 646.805 ............................................................................................................9

**Other Authorities**

Edward Brunet, *Improving Class Action Efficiency by Expanded Use of Parens Patriae Suits and Intervention*, 74 Tul. L. Rev. 1919, 1931-38 (2000) ...................................10

Fed. R. Civ. P. 23 ................................................................................................10, 11

-iv-

1    <u>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENTS**</u>

2    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3    PLEASE TAKE NOTICE THAT, on October 30, 2015, at 9 A.M. or as soon thereafter as

4    the matter may be heard, in the Courtroom of the Honorable Susan Illston, United States District

5    Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco,

6    California, the State of Oregon will and does move, for an Order approving the settlements

7    reached between Oregon and the defendants in the State of Oregon's enforcement and *parens*

8    *patriae* action against the  Hitachi Displays, Chi Mei Optoelectronics, Epson, LG Display, Sharp,

9    Samsung, AU Optronics, Toshiba, and HannStar defendant groups ("Defendants" or "Oregon

10    Defendants").[1]  Pursuant to ORS 646.775, Oregon requests that the court grant approval of (1)

11    the proposed settlements with all named defendants; (2) the proposed form of notice to Oregon

12    political subdivisions and natural persons, and proposed deadlines for electing exclusion from

13    the settlements; and (3) the proposed distribution for political subdivisions, and the proposed

14    distribution and claims process for Oregon natural persons.

15    The Oregon Attorney General seeks approval of the proposed settlements and the form of

16    the notice under applicable state law.  The Attorney General has determined the settlements are

17    reasonable, and the settlements are the result of extensive arm's-length negotiations conducted

18    by experienced counsel following substantial litigation.  This motion is based on: the supporting

19

20    [1] The individual defendants named in Oregon's Second Amended Complaint which make up these nine defendant groups are: Hitachi Ltd., Hitachi Displays, Ltd. and Hitachi Electronic Devices (USA), Inc. ("Hitachi Displays"); Chi Mei Corporation, Chi Mei Innolux Corporation, and Chi Mei Optoelectronics USA, Inc. ("Chi Mei Optoelectronics"); Epson Imaging Devices Corporation and Epson Electronics America, Inc. ("Epson"); LG Display Co., Ltd. and LG Display America, Inc. ("LG Display"); Sharp Corporation and Sharp Electronics Corporation ("Sharp"); Samsung Electronics America, Inc., Samsung Electronics Co., Ltd., and Samsung Semiconductor, Inc. ("Samsung"); AU Optronics Corporation, AU Optronics Corporation America ("AU Optronics"); Toshiba Corporation, Toshiba America Electronic Components, Inc., Toshiba America Information Systems, Inc., and Toshiba Mobile Display Company, Ltd. ("Toshiba"); and HannStar Display Corporation ("HannStar").

26    Page 1 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL DEFENDANTS

1   Memorandum of Points and Authorities; the Declarations of Michael K. Kelley ("Kelley Decl."),

2   Tim D. Nord ("Nord Decl."), Mark E. Meitzen ("Meitzen Decl."), Jennifer Keough ("Claims

3   Administrator Decl.") and Ellen Klem (Klem Decl.") filed concurrently with this Notice; and the

4   records in this case and in Master Docket No. M-07-01827-SI.

5   **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

6   **I.    INTRODUCTION**

7        The State of Oregon submits this memorandum in support of its motion for an order

8   approving the settlements with Defendants, approving a plan for notice and opportunity to opt-

9   out, and approving a proposed plan of distribution as outlined below.  A proposed order

10   approving the settlements and the notice plan is submitted with this motion.

11        The Oregon Attorney General has entered into the following settlements[2] that pay a

12   total of $ 21,505,000:

13

| Defendant | Payment to Oregon |
|---|---|
| Hitachi Displays (Ex. A) | $565,400 |
| Chi Mei (Ex. B) | $1,634,600 |
| Epson (Ex. C) | $105,000 |
| LG Display (Ex. D) | $6,975,000 |
| Sharp (Ex. E) | $1,950,000 |
| Samsung (Ex. F) | $4,500,000 |
| AU Optronics (Ex. G) | $4,250,000 |
| Toshiba (Ex. H) | $525,000 |

23

24   [2] The settlement agreements are attached as Exhibits A to I to the accompanying Declaration of
Michael K. Kelley.

25

26   Page 2 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
         DEFENDANTS

| 1 | HannStar (Ex. I) | $1,000,000 |
| 2 | **Total Payment to Oregon** | **$ 21,505,000** |

3       With two exceptions, the settlements require Defendants cooperate with prosecution of

4 non-settling Defendants (Toshiba excepted) and to demonstrate ongoing compliance with state

5 and federal antitrust laws (Toshiba and Epson excepted).  As all Defendants now have settled,

6 the cooperation provisions likely will be moot unless an unexpected level of opt outs were to

7 occur.[3]

8       In exchange, the Attorney General will release all claims asserted in the action (or arising

9 from facts alleged in Oregon's complaint or the sale of LCD panels contained in various

10 products), including but not limited to its *parens patriae* claims, pursuant to the terms of the

11 various settlement agreements.  Under Oregon's antitrust laws, the Attorney General's

12 enforcement powers include authority to bring indirect purchaser claims on behalf of the State,

13 Oregon political subdivisions and natural persons.

14       As set forth in more detail below and the Declarations of Michael K. Kelley and Tim D.

15 Nord, these settlements are reasonable and will provide a superior recovery relative to the

16 previously approved settlements of the Indirect Purchaser Plaintiffs ("IPPs") and the eight states

17 this Court has referred to as the "Settling States."[4] The Court should grant approval pursuant to

18 ORS 646.775 because the Attorney General has determined the Oregon settlements to be in the

19 best interests of the State of Oregon, the settlements are well within the range of possible

20 approval by the Court, and the settlements are the product of extensive litigation and negotiation.

21 As also set out in more detail below, Oregon proposes a notice and opt-out procedure consistent

22 _____

23 [3] Each of the settlement agreements provide the settling Defendant with an option to rescind the settlement if the level of opt outs exceeds five percent.

24 [4]  These settling states include Arkansas, California, Florida, Michigan, Missouri, New York, West Virginia and Wisconsin.

25

26 Page 3 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
        DEFENDANTS

1    with ORS 646.775(2).  Oregon's proposed notice procedure by publication is designed to provide

2    actual notice to political subdivisions and notice by multi-media publication to natural persons.

3    Any Oregon natural person or political subdivision on whose behalf claims were brought will be

4    provided an opportunity to be excluded from this action.

5        In summary, the Court should approve the settlements under Oregon state law and the

6    Attorney General's proposed notice, opt-out plan and plan of distribution.  In approving the

7    proposed notice and opt-out plan, Oregon requests the Court consider the Oregon Attorney

8    General's proposed plan of distribution and additional notice.  In conjunction with this approval,

9    the Oregon Attorney General requests the Court set a schedule that would provide for: (1) notice;

10   (2) an opportunity for political subdivisions and natural persons to elect exclusion; (3)

11   quantification of opt-outs and an opportunity for Defendants to exercise any termination rights

12   pursuant to the terms of the settlements; and (4) an opportunity to request an amount for the

13   Attorney General's costs and attorney fees pursuant to Oregon's antitrust laws.  Assuming no

14   elections can be made or are made by Defendants, submission of final judgments of dismissal

15   and distribution will occur following conclusion of the schedule for these four items set out

16   above.

17   **II.**      **BACKGROUND**

18       **A.**     **Oregon's Case**

19        The Oregon Attorney General ("Oregon") brought this action in a law enforcement

20   capacity on behalf of the state, and in a *parens patriae* capacity on behalf of local government

21   entities ("political subdivisions") and natural persons, asserting federal law claims for injunctive

22   relief and state law claims for antitrust damages, restitution, disgorgement, equitable relief and

23   civil penalties.  Defendants dispute the allegations in Oregon's Second Amended Complaint and

24   have asserted defenses to Oregon's claims.

25

26   Page 4 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
               DEFENDANTS

1       In 2010, before initiating its own action, Oregon first appeared in the MDL with the

2    Attorneys General for the states of Illinois and Washington to intervene and oppose preliminary

3    approval of the indirect purchaser plaintiffs' ("IPPs") settlement with Epson, as these states had

4    exclusive representative authority.  Subsequently, Oregon filed its action in the United States

5    District Court for the District of Oregon on August 10, 2010.[5]  On September 20, 2010, the case

6    was transferred to the MDL with Oregon's consent.  Oregon initially was involved in the 2011

7    mediation efforts involving the IPP class and many of the Settling States.  After significant pre-

8    complaint investigation, discovery, expert analysis and five years of litigation, Oregon now has

9    resolved its claims against the remaining Oregon Defendants. These settlements include

10   appropriate injunctive relief and substantially larger restitution to harmed individuals and entities

11   relative to the settlement amounts negotiated by the Settling States.[6]  The agreed to terms of

12   settlement are reasonable when evaluated against the range of likely outcomes and risks

13   associated with further litigation.  The Oregon Attorney General believes approval of the

14   settlements is in the best interests of the State, its citizens, and its political subdivisions.

15        **1.    Discovery**

16       Oregon's prosecution of this action against Defendants involved substantial discovery

17   efforts prior to reaching the proposed settlements.

18          **a.    Document Review and Fact Witness Depositions.**

19       Oregon has reviewed and evaluated a significant portion of the translated versions of

20   documents produced by Defendants and their co-conspirators.  Kelley Decl. ¶ 8. Shortly after

21   the Oregon case was consolidated with the MDL, Oregon began reviewing and summarizing the

---

22   [5] Prior to filing the action, the Attorney General entered into a settlement agreement with the

23   Chunghwa Defendants in exchange for substantial cooperation and payment to Oregon's
Protection and Education Account as provided for in ORS 180.095.

24   [6] *See* Kelley Decl. regarding litigation summary, as well as comparison to prior indirect
purchaser settlements.

25

26   Page 5 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
           DEFENDANTS

1   previously-taken MDL depositions and telephonically attending the ongoing depositions being

2   taken in the MDL.  In total, Oregon reviewed transcripts of or attended dozens of depositions of

3   TFT-LCD MDL witnesses. Kelley Decl. ¶ 9.

                          **b.**       **Discovery Requests Served Upon Defendants, Co-**
4
                                      **Conspirators, and Third Parties.**
5

6           Oregon served Defendants with initial requests for production of documents, initial and

7   second sets of interrogatories, initial and second sets of requests for admission, and engaged in

8   multiple conferrals with many of the Defendants concerning their responses.  Kelley Decl. ¶ 10.

9   In addition, Oregon reviewed and analyzed the scores of written discovery requests served on the

10  Oregon Defendants, co-conspirators and third parties by other MDL parties and the responses to

11  those discovery requests. *Id.*

                          **c.**       **Responses to Written Discovery Propounded By Defendants on**
12
                                      **Oregon**
13

14          Oregon's production of documents and written responses to Defendants' written

15  discovery requests was a substantial undertaking.  Oregon collected TFT-LCD product purchase

16  data from not less than 60 of Oregon's state and political subdivisions.  Kelley Decl. ¶ 11.

17  Oregon located, assembled, reviewed and provided Defendants available written and electronic

18  data detailing TFT-LCD product purchase records for Oregon's 10 largest public government

19  employers.  *Id.*  For these 10 largest public government employers, Oregon also located,

20  assembled, reviewed and provided to Defendants e-mails from the relevant period sent and

21  received by the custodians of LCD product purchase documents.  *Id.*  Oregon also responded to

22  Defendants' numerous rounds of questions about the produced purchase data and repeated

23  requests for additional discovery.  *Id.* at ¶ 9.

24  ///

25  ///

26  Page 6 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
              DEFENDANTS

d.    **Depositions of State Employees**.

Oregon prepared and produced three witnesses – one retired State Procurement Officer, the current State Procurement Officer, and Oregon State University's Assistant Vice President and Controller. Oregon's current State Procurement Officer was deposed by Defendants for the better part of two days. Kelley Decl. ¶ 17.

2.    **Motion Practice**

During the period 2010-11, the parties briefed and this Court ruled upon two separate motions to dismiss Oregon's complaint. As a result of the Court's rulings, Oregon's claims for indirect purchases were limited to conduct occurring from 2002 through 2006. However, the Court recognized that the Oregon Attorney General could pursue a claim for disgorgement based upon Oregon state law. Kelley Decl. ¶ 14.

3.    **Expert Work**

Oregon utilized three testifying experts in this matter. Along with Washington and several other states, Oregon employed Dr. Mark Meitzen to testify generally regarding overcharges that end-purchasers incurred due to Defendants' conduct. Kelley Decl. ¶ 13. Oregon also retained Dr. Kenneth Flamm to determine whether Defendants' engaged in illegal price-fixing activities, to define the scope of the alleged conspiracy, and to determine if the price-fixing activities impacted Oregon consumers. Kelley Decl. ¶ 10. Finally, Oregon retained Dr. Kevin Cahill to determine the relative division of damages between state governmental entities, natural persons and business indirect purchasers in Oregon. Kelley Decl. ¶ 13.

4.    **Settlement Agreements**

Oregon participated in the first round of mediations between the IPPs, state Attorneys General, and the MDL defendants in 2011. Since that time, Oregon has negotiated with Defendants on an individual basis. Over the last four years, Oregon finalized settlements with the remaining Defendants.

Page 7 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL DEFENDANTS

1              **a.      Monetary Payment**

2              Final payments have been received from all Defendants except Defendants HannStar and

3      AUO. The final payments from Defendants AUO and HannStar are due before the end of 2015.

4      Kelley Decl. ¶ 16.  The settlement funds currently are held in an escrow account with U.S.

5      Bank, pending settlement approval and disbursement of the funds.

6              **b.      Injunctive Provisions**

7              Most Defendants (other than Epson and Toshiba) are subject to additional injunctive

8      terms. Kelley Decl., Ex. A, Ex. B, Ex. D, Ex. E, Ex. F, Ex. G, and Ex. I.

9              **c.      Cooperation**

10             Defendants, in their respective settlement agreements, agreed to varying cooperation

11     terms to assist with Oregon's ongoing litigation in this matter.  These terms  included: (a)

12     providing a detailed account of all facts known to each entity that are relevant to Oregon's

13     action; (b) producing all documents, including all translated documents, relating to the

14     conspiracy as alleged by Oregon; (c) providing any additional transcripts of depositions taken of

15     company employees; and (d) making 2-4 employees available for interviews, depositions, or

16     trial.  Kelley Decl. Ex. A, Ex. B, Ex. C, Ex. D, Ex. E, Ex. F, and Ex. I.  Given that all Defendants

17     now have agreed to settle, such cooperation will be useful to Oregon only if one or more

18     Defendants elect to rescind.

19     `          **d.      Release**

20             Each settlement agreement provides for the release of all claims that were or could have

21     been made against each settling defendant, respectively, under the facts as alleged in Oregon's

22     complaint. Kelley Decl., Exs. A - I.  The respective releases cover the State,  as well as

23     Oregon's political subdivisions and natural persons (represented by the Attorney General in her

24

25

26     Page 8 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
               DEFENDANTS

1  *parens* capacity) who do not submit a request for exclusion as contemplated in the notice and

2  opt-out procedures set forth below. *Id.*

3  **III.   THE PROPOSED SETTLEMENTS ARE REASONABLE AND SHOULD BE APPROVED**

4

5  **A.   The Standard for Settlement Approval - Deference for Attorney General Settlements of *Parens Patriae* Actions.**

6       The Oregon Attorney General is an elected public servant vested with the authority to

7  bring antitrust actions on behalf of the State and antitrust actions *parens patriae* on behalf of its

8  political subdivisions and its citizens.  Oregon brought this action for damages, disgorgement,

9  equitable relief and civil penalties under Oregon Revised Statutes ("ORS") 646.705 through

10  ORS 646.805.  ORS 646.775 governs settlement of *parens patriae* claims by the Oregon

11  Attorney General and provides that any settlements be approved by the court.  ORS 646.775(3)

12  ("An action pursuant to subsection (1)(a) of this section shall not be dismissed or compromised

13  without approval of the court[.]").  No Oregon court has interpreted this statute.  Given that the

14  Oregon legislature provided broad authority to the Oregon Attorney General to bring antitrust

15  claims, and that during the relevant period the Attorney General was the only one who could

16  have brought these indirect purchaser claims, consideration should be given to the Attorney

17  General's decision to settle these claims[7].  The role of the Oregon Attorney General as Oregon's

18  chief law enforcer and the breadth of claims brought further supports the concept that the

19  settlements proposed are in the best interests of the State, its political subdivisions, and its

20  natural persons. *Anderson v. Barclays Capital Real Estate, Inc.*, 2010 WL 7366781, at *1 (N.D.

21  Ohio 2010) (State Attorney General's decision as to how best to enforce and apply state law of

22

23  _____

24  [7] This case has spanned the terms of two Oregon Attorneys General.  John Kroger was the Attorney General at the time this action was brought and during the negotiation of the initial settlements.

25

26  Page 9 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL DEFENDANTS

1  statewide interest and concern is a role his or her office is authorized to play and deference to

2  such decisions is appropriate).

3      Oregon's suit is not a class action.  The Oregon Attorney General's settlement of this

4  action, including the *parens patriae* claims, is not governed by Fed. R. Civ. P. 23.  Federal

5  Courts have evaluated settlements containing both private actions and *parens patriae* actions

6  brought by state attorneys general with a level of deference towards the attorneys generals' views

7  on reasonableness of a settlement.  *See In re Lorazepam & Clorazepate Antitrust Litig.*, 205

8  F.R.D. 369, 380 (D.D.C. 2002) ("the Court may place greater weight on such opinion in

9  addressing a settlement negotiated by government attorneys committed to protecting the public

10  interest."); *In re Mid-Atlantic Toyota Antitrust Litig.* 564 F. Supp. 1379, 1384-1386 (D.Md.

11  1983) *In re Toys 'R' Us Antitrust Litig*, 191 F.R.D. 347, 351 *(E.D.N.Y.2000)* ("The participation

12  of the State Attorneys General furnishes extra assurance that consumers' interests are

13  protected."); *accord New York v. Reebok Int'l. Ltd*, 96 F.3d 44, 48 (2d Cir. 1996) (attorneys

14  general in *parens actions* are motivated by concern for the public interest). *See also* Edward

15  Brunet, *Improving Class Action Efficiency by Expanded Use of Parens Patriae Suits and*

16  *Intervention*, 74 Tul. L. Rev. 1919, 1931-38 (2000) (the Attorney General's office is in a better

17  position to monitor the counsel than class members would be).

18      The context in which the Attorney General obtained these proposed settlements presents

19  no issues of conflict of interest, unfairness, favoritism or an unreasonable failure to investigate

20  and prosecute.  In these circumstances, the settlements are fair, adequate and reasonable.

21      **B.    This court should approve the proposed settlements**

22      Courts, particularly in the Ninth Circuit, prefer settlement of complex actions to

23  litigation. See, e.g., *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir 2008); *Officers*

24  *for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir 1982) ("voluntary conciliation and

25

26  Page 10 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
         DEFENDANTS

1   settlement are the preferred means of dispute resolution."). The State's complaint alleges an

2   antitrust conspiracy of considerable magnitude and many factual and legal complexities.

3       The settlement payments obtained by the Oregon Attorney General are proportionately

4   more than the settlements of the IPPs and the Settling States previously approved by this Court.[8]

5   Kelley Decl. ¶ 20.  In addition, the settlements do not designate any portion of Defendants'

6   settlement payments to particular claims, such as civil penalties payable to the state.  The

7   injunctive and cooperation provisions are similar to those awarded final approval by this court in

8   both the IPP and Direct Purchaser Plaintiffs class settlements.

9       Again, while Oregon's settlements do not involve a class and need not meet the

10  reasonableness standard under Fed. R. Civ. P. 23, in the present case Oregon's settlements more

11  than qualify for court approval under those more stringent class action approval standards.  In

12  assessing whether a proposed settlement meets the standard for preliminary approval under Fed.

13  R. Civ. P. 23, the courts have identified the primary factors that should be considered: (1)

14  whether the settlement is a result of arm's-length bargaining; (2) the terms of the settlement in

15  relation to the strength of plaintiff's case; (3) whether sufficient discovery had been conducted at

16  the time of settlement to evaluate the case; and (4) the opinion of experienced counsel. *In re Mid-*

17  *Atlantic Toyota Antitrust Litig.*, 564 F.Supp. 1379, 1383-1384 (D.Md. 1983).  Factors that

18  support approval of Oregon's proposed settlements include:

19      • The Oregon settlements are the result of arm's-length bargaining by experienced
        counsel. The majority of the settlements were reached after years of litigation.

20

21

22  [8] As an example, the IPPs and State Attorneys General settled their claims with defendants Chi
    Mei, Hitachi Displays, Epson, LG, Sharp, and Samsung for $ 900,983,250. See *Dkt. 6141 p.3.*
23  According to the 2010 census, the population of the United States, less Oregon, was 304,914,464
    people.  This amounts to a settlement of $2.95 per person in the Settling States.  Oregon's 2010
24  census population was 3,831,074 people, making Oregon's settlements against the same
    defendants worth $5.61 per person.
25

26  Page 11 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
    DEFENDANTS

- Great weight should be given to approval of the settlements by two Oregon Attorneys General committed to protecting the public and representing the public's legal interests.

- The settlements follow extensive discovery, motion practice, and significant prosecution of the case.

- Oregon's settlements, calculated on a per-purchase unit basis, are more favorable than other similar plaintiffs.

- The risks which would be associated with further litigation.

- The potential delay in distribution that would accompany further litigation.

An additional important consideration for the Court in evaluating Oregon's request for approval of the settlements and the forms of notice is that any political subdivision or natural person that opts out likely would not possess any viable claim against Defendants due to claims being either time-barred or not available under the language of Oregon's antitrust act.  As a result, the proposed notices state that opting out of this litigation does not necessarily imply any viable claims could be made.

## IV.   THE PROPOSED NOTICE AND OPT-OUT PROCEDURES SHOULD BE APPROVED

Oregon seeks Court approval of the proposed notice and opt-out procedures for the settlements discussed above.  Draft notices are attached as Exhibits A and B to the Keough Declaration and the Nord Declaration.  The notice plan for Oregon political subdivisions is nearly identical to the plan approved by Judge Hamilton in the DRAM litigation.  Nord Decl. ¶ 12; *see In re DRAM Antitrust Lit.*, C 06-04333 SC (N.D. Cal. June 23, 2010).

### A.   Approval of Initial Notice and Opt-Out Procedures

Oregon's antitrust act provides the following regarding required notice to natural persons and political subdivisions:

In any action pursuant to subsection (1)(a) of this section, the Attorney General shall, at the times, and in the manner and with the content the court directs, give notice by publication.  If the court finds that notice given solely by publication

Page 12 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL DEFENDANTS

1  would deny due process of law to a natural person or political subdivision, the
   court may direct further notice to the natural person or political subdivision
2  according to the circumstances of the case.

3       ORS 646.775(2)(a). This statute envisions notice at any stage of the litigation prior to

4  resolution and presumes that notice by publication is sufficient in most cases. Under the Oregon

5  Attorney General's notice proposal, interested persons and political subdivisions will receive

6  substantially more notice and information upon which to base a decision than is required by the

7  statute.  Specifically, as explained in the Declarations of Keough, Klem and Nord, the Attorney

8  General is proposing to advise Oregon political subdivisions and Oregon natural persons of:

9       (a)     The resolution of the litigation and the deadline to elect exclusion;

10      (b)     The proposed settlements, as well as the approximate division of the total

11              settlement amounts between the State, political subdivisions and natural persons;

12      (c)     With respect to political subdivisions, the formula (based on FTEs) for

13              determining the restitution  each is entitled to and that such distribution will not

14              require the filing of a claim; and

15      (d)     In addition to the process for opting out of the settlements, initial information to

16              natural persons regarding the anticipated distribution of settlement proceeds and

17              the process for filing a claim.

18      Oregon law requires natural persons and political subdivisions be provided an

19  opportunity to exclude themselves from the case.  ORS 646.775(2)(b) (providing  that a "natural

20  person or political subdivision on whose behalf an action is brought pursuant to subsection (1)(a)

21  of this section may elect to exclude from adjudication the portion of the claim for monetary relief

22  attributable to the natural person or political subdivision by filing notice of the election with the

23  court within the time specified in the notice given pursuant to paragraph (a) of this subsection.").

24  Oregon law does not provide a right to object to the Attorney General's settlements.  In fact, the

25

26  Page 13 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
              DEFENDANTS

1   right to be excluded does not arise from the settlements themselves, but from the potential

2   resolution of the indirect purchaser *parens patriae* claims on behalf of political subdivisions and

3   natural persons.

4         Within 15 days of approval, the Attorney General will provide notice of this action and

5   these settlements by direct mail to political subdivisions.  Nord. Decl. ¶ 10.  Oregon has

6   developed a database of contact information for local Oregon government entities and public

7   colleges and universities.  Oregon will mail to each of these entities a notice that substantially

8   complies with the first page of the notice attached as Exhibit A to the Nord Declaration (which is

9   also Exhibit A to the Keough Decl.).  To ensure completeness, the same letter and notice form

10  will be sent to trade associations and lobbying groups formed by or representing local

11  government entities with a request that these organizations notify their members of this action.

12  The organizations that will be contacted include, but are not limited to, the Association of

13  Oregon Counties, the League of Oregon Cities, the Oregon School Boards Association, the

14  Oregon Fire District Directors Association, the Oregon School Boards Association, and the

15  Special Districts Association of Oregon.  Political subdivisions will be given 60 days to elect

16  exclusion.

17        Opt-out notice to natural persons will be provided by press releases, print media, online

18  media and other potential media.  Keough Decl. ¶ 15 and Klem Decl.  Potential claimants shall

19  have 60 days after publication to elect to be excluded from these settlements and this action.

20        **B.      Additional Notice to File Claims**

21        Following the period allowed for exclusion and following submission of judgments of

22  dismissal and distribution, further notice and outreach efforts will be made to encourage the

23  filing of claims by Oregon natural persons.  The Declarations of Jennifer Keough and Oregon

24  Department of Justice's Ellen Klem describe how the notice plan will be implemented and the

25

26  Page 14 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
            DEFENDANTS

1  supplemental efforts that will be made by the Attorney General. At the conclusion of the initial

2  claims period a determination will be made regarding the success of the notice efforts, and

3  whether additional notice should be made and the time for natural persons to file claims should

4  be extended. As the settlement notice states, the Oregon Attorney General has developed and

5  maintained a website providing information on this action, which can be found at:

6  www.doj.state.or.us/consumer/pages/lcd_antitrust_litigation.aspx. A description of the

7  settlements and instructions regarding exclusion will be included on the website. The Oregon

8  Attorney General also will issue press releases detailing these settlements and directing people to

9  the settlement website to obtain information about how to file claims.

10  **V.    DISMISSAL, DISTRIBUTION AND ATTORNEYS' FEES AND COSTS**

11      **A.    Dismissal**

12          Following expiration of the period to opt out and Defendants' right to rescind, the

13  Attorney General anticipates dismissing all the Defendants with prejudice. The result of these

14  dismissals with prejudice will be the release of claims pursuant to the terms of the respective

15  settlement agreements. The release language in the respective settlement agreements may differ

16  from defendant to defendant, but generally the Attorney General will release all of Oregon's

17  claims that were asserted or could have been asserted by Oregon in its action and any claims

18  either arising out of the facts alleged in Oregon's complaint or relating to Defendants'

19  anticompetitive conduct and the sale of LCD panels or LCD products occurring on or before

20  December 31, 2006. Kelley Decl. Exs. A–I. The releases do not affect contract, warranty or

21  similar potential claims as specified in the releases.

22      **B.    Distribution**

23          Upon expiration of the opt-out period and in conjunction with the judgments of dismissal,

24  the Attorney General intends to move for a final judgment directing disbursement ("Judgment of

25

26  Page 15 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
        DEFENDANTS

1    Disbursement") that will provide for segregation and distribution of the settlement proceeds.

2    After allowance of administrative costs, attorneys' fees and costs, the Attorney General proposes

3    to divide the settlement funds first into two separate portions based upon information derived by

4    Dr. Kevin Cahill in his expert reports prepared for Oregon: 26 percent to the State and political

5    subdivisions and 74 percent to natural persons. *See* Kelley Decl. Ex. J. The Oregon Attorney

6    General intends to divide the government portion approximately between the State and political

7    subdivisions based upon full-time equivalent (FTE) employment with that portion attributable to

8    the State directed to the Oregon General Fund.[9]

9         For political subdivisions, the Oregon Attorney General plans on distributing settlement

10   funds *pro rata*, according to each political subdivision's FTE number, as found in U.S. Census

11   data. The Attorney General proposes to limit eligibility for reimbursement to political

12   subdivisions entitled to $100 or more, because it is not economically justifiable to issue *de*

13   *minimis* amounts to smaller entities. The Attorney General calculates political subdivisions with

14   more than 23 FTE will meet the $100 threshold, resulting in at least 97 percent of Oregon

15   political subdivisions being compensated under the plan of distribution. Payment will not

16   require a claim, but will be by check directly to the individual political subdivision. This plan

17   satisfies the requirements of ORS 646.775(5)(a) while also allowing for efficient and effective

18   restitution.

19        Distribution to natural persons also will be made *pro rata* based upon the products

20   purchased. Natural persons will not be required to provide documentation for the first two items

21   claimed. There will be a schedule of minimum and maximum payments for natural person

22

---

23   [9] State agencies in Oregon do not have authority independent of the Attorney General to bring
24   antitrust claims. State agencies also purchased computers under uniform state purchasing
     contracts, and agency budgets come out of this general fund. Returning the funds for the state
25   legislature to administer is the most legally-efficient way to administer these funds.

26   Page 16 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
              DEFENDANTS

1   claimants.  Maximum payments will be based upon estimated overcharge amount as calculated

2   by Oregon's damages expert, Dr. Mark Meitzen.  Meitzen Decl. ¶ 7.  The Attorney General

3   requests discretion regarding the process to maximize disbursement of funds to natural persons

4   with any residual amount distributed to the Oregon Department of Justice Protection and

5   Education Revolving Account. *See* ORS 180.095.   As explained above, in conjunction with the

6   submission of the judgments of dismissal, a final Judgment of Disbursement will be submitted to

7   the court for approval.

8       **C.      Attorneys' Fees and Costs**

9           The Attorney General will request that the court award reasonable attorneys' fees,

10  investigative costs and litigation expenses as authorized under ORS 646.775.  Oregon's statute

11  authorizes recovery of both investigative costs and expert fees as recoverable expenses.  It is

12  anticipated that the total amount of attorney fees will not exceed 20 percent of the funds

13  recovered.  This application will be made following entry of the Court's order of approval no

14  later than December 2015.

15      **D.      Disbursement for Administrative Expenses**

16          The Oregon Attorney General  requests that the Court order the release of up to $815,000

17  from U.S. Bank to the Attorney General, to be held in trust and ultimately used to pay for

18  administrative, notice and claims processing expenses. *See* Kelley Decl. ¶ 16 ($815,000

19  designated in the nine settlement agreements for administrative and notice-related expenses.

20      **E.      Proposed Order**

21          Oregon's Proposed Order Granting Approval of Settlements With All Defendants

22  ("Proposed Order") is submitted contemporaneously with this Motion for Approval.  Entry of the

23  Proposed Order will have the effect of: (1) approving each of the proposed settlement

24  agreements presented by the Oregon Attorney General through the Motion for Approval; (2)

25

26  Page 17 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
                DEFENDANTS

1   approving the form of initial notice and opt-out procedures which Oregon has detailed to the

2   Court; (3) approving Oregon's request to release $815,000 to the Oregon Attorney General to be

3   held in trust and used to pay for administrative, notice, and claims processing expenses; (4)

4   approving the timing of Oregon's plan to petition for costs and attorney fees; (5) approving

5   Oregon's proposal to submit final judgments of dismissal for all Defendants if after the opt-out

6   period Defendants are not permitted to rescind or do not rescind  their settlements with Oregon;

7   and (6) approving the Oregon Attorney General's terms of distribution and plan for notice to

8   natural persons following entry of final judgments dismissing all Defendants and a final

9   judgment of distribution.

10  **VI.       CONCLUSION**

11          For the reasons stated above, the Oregon Attorney General respectfully requests the

12  Court enter the Proposed Order immediately if no objection is timely lodged in this Court.  If

13  objection to the form of the Proposed Order is lodged timely, Oregon requests the Proposed

14  Order be entered immediately following the noted hearing on October 30, 2015.

15          Dated this 25th day of September, 2015.

16                              HAGLUND KELLEY LLP

17

18                      By: /s/ Michael K. Kelley
                            **Michael E. Haglund**, OSB No. 772030
19                          *(Pro Hav Vice)*
                            **Michael K. Kelley** OSB No. 853782
20                          *(Pro Hav Vice*)
                            Special Assistant Attorneys General for
21                          Plaintiff State of Oregon
                            Telephone: (503) 225-0777
22                          Facsimile: (503) 225-1257
                            Email: haglund@hk-law.com
23

24

25

26  Page 18 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
            DEFENDANTS

1

Tim D. Nord, OSB No. 882800
Oregon Senior Assistant Attorney General
Department of Justice

2

1162 Court Street NE
Salem, OR 97301-4096

3

Telephone: (503) 934-4400
Facsimile: (503) 378-5017

4

Email: Tim.D.Nord@doj.state.or.us

5

Attorneys for Plaintiff State of Oregon

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26    Page 19 - PLAINTIFF'S MOTION FOR APPROVAL OF SETTLEMENT WITH ALL
          DEFENDANTS

Department of Justice
1162 Court Street NE
Salem, OR  97301-4096
(503) 934-4400/Fax: (503) 378-5017

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September, 2015, I electronically filed the

**PLAINTIFF STATE OF OREGON'S NOTICE OF MOTION AND MOTION FOR**

**APPROVAL OF SETTLEMENTS WITH ALL DEFENDANTS** with the Clerk of the

Court using the CM/ECF system, which will automatically send email notification to the

parties and counsel of record.

HAGLUND KELLEY LLP


By:/s/ Michael K. Kelley
Michael G. Neff, OSB No. 925360
(*Pro Hac Vice*)
Email:  mneff@hk-law.com
Michael E. Haglund, OSB No.772030
(*Pro Hac Vice*)
Email:  haglund@hk-law.com
Michael K. Kelley, OSB No. 853782
(*Pro Hac Vice*)
Email:  kelley@hk-law.com
HAGLUND KELLEY LLP
200 S.W. Market Street, Suite 200
Portland, Oregon 97201
Telephone: (503) 225-0777
Facsimile:  (503) 225-1257
Special Assistant Attorneys General for
    Plaintiff State of Oregon

Tim D. Nord, OSB No. 882800
Email:  Tim.D.Nord@doj.state.or.us
Oregon Senior Assistant Attorney General
1162 Court Street, NE
Salem, OR 97301-4096
Telephone: (503) 943-4400
Facsimile: (503) 225-1257

Attorneys for Plaintiff State of Oregon

PAGE 1 – CERTIFICATE OF SERVICE